1
2
3
4

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: 818-347-3333 | Fax: 818-347-4118

5
6
7

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN241057)
7095 Indiana Ave Ste 200
Riverside, CA 92506
(951) 682-9311
Email: trentpackerlaw@gmail.com

8

*Attorneys for Plaintiffs*

9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13

SHAMEKA DRYE; L.N.M.D.;
J.C.T.D.; D.R.D.; A.M.D.; P.N.K.D.;
and DANNIE-ANN CONNER,

14

Plaintiffs,

15

v.

16
17

CITY OF HEMET; and DOES 1-10,
inclusive,

18
19

Defendants.

Case No.: 5:23-cv-02152

**COMPLAINT FOR DAMAGES**

Pursuant to 42 U.S.C. §1983:
1. Unreasonable Detention and Arrest
2. Excessive Force
3. Interference with Familial Relationship
4. Denial of Medical Care
5. Supervisor Liability
6. Unconstitutional Custom, Practice, or Policy
7. Ratification
8. Failure to Train

Pursuant to State Law:
9. False Arrest/False Imprisonment
10. Battery (Survival/Wrongful Death)
11. Negligence (Survival/Wrongful Death)
12. Negligent Infliction of Emotional Distress
13. Violation of the Bane Act (Cal. Civil Code §52.1)

**DEMAND FOR JURY TRIAL**

20
21
22
23
24
25
26
27
28

1

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiffs SHAMEKA DRYE; L.N.M.D. a minor by and through guardian *ad litem* Shameka Drye; J.C.T.D. a minor by and through guardian *ad litem* Shameka Drye; D.R.D. a minor by and through guardian *ad litem* Shameka Drye; A.M.D. a minor by and through guardian *ad litem* Shameka Drye; P.N.K.D. a minor by and through guardian *ad litem* Shameka Drye; each individually and as successor and interest to Decedent CHRISTIAN DRYE ("Decedent" or "DRYE"); and DANNIE-ANN CONNER, individually, for their Complaint against CITY OF HEMET and DOES 1-10, inclusive and hereby alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

4.      On or around July 19, 2023, Plaintiffs served their comprehensive and timely claims for damages on their own behalf and on behalf of Decedent with the CITY OF HEMET pursuant to applicable sections of the California Government Code.

/ / /

## INTRODUCTION

5.     This civil rights action seeks compensatory and punitive damages arising out of the violation of both Federal and State Law including the use of excessive and unreasonable force against CHRISTIAN DRYE, deceased, by Defendants CITY OF HEMET, and City Hemet Police Department ("HPD") Officer DOES 1-10, inclusive, on February 21, 2023, at approximately 10:10 a.m., at his own home in Hemet, California. Defendant Officers caused Plaintiffs' and Decedent's injuries, harm, and damages when Defendant Officers shot and killed Decedent.

6.     Decedent DRYE, suffered serious bodily injury and death, as a direct and proximate result of the actions and inactions of Defendants CITY, and HPD Defendant Officers. The Defendant Officers are directly liable for their nonfeasance and malfeasance and for Decedent and Plaintiffs' injuries, harm, and damages under federal law pursuant to 42 U.S.C. §1983 and under state law pursuant to Cal. Govt. Code §§820, 820.4, 820.8, and 821.8, Cal. Civ. Code §52.1, and Cal. Code. of Civ. Pro. §§377.20, 377.30, 377.34, 377.60, 377.61, and 1021.5. Defendant CITY is directly liable for its conduct pursuant to 42 U.S.C. §1983 pursuant to *Monell* and vicariously liable for the acts and omissions and for the nonfeasance and malfeasance of HPD Defendant Officers pursuant to Cal. Govt. Code §§820(a), 815.2(a), and 815.6.

7.     Defendants DOES 1-8, inclusive, caused various injuries herein directly, or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Specifically, Defendants DOES 1-8, inclusive, unreasonable escalated the situation, failed to de-escalate the situation, and whose conduct was part and parcel with the unreasonable shooting death of Decedent while he was not an immediate threat of death or serious bodily injury to any person, causing his death.

8.    Defendants CITY OF HEMET and DOES 7-10, inclusive, also caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny.

9.    This action is in the public interest as Plaintiffs seeks by means of this civil rights action to hold accountable those responsible for the serious bodily injury inflicted by Defendant Officers and CITY OF HEMET'S ratification, failure to train, and policy of inaction in the face of serious constitutional violations, as well as the unlawful custom and practice with respect to the use force.

10.    Plaintiffs seek compensatory damages from Defendants for violating various rights under the United States Constitution in connection with their use of excessive and unreasonable deadly force. Plaintiffs seek punitive damages from Defendant Officers only, and not Defendant CITY.

## **PARTIES**

11.    Decedent CHRISTIAN DRYE ("Decedent" and/or "DRYE") is the Decedent in this action and was an individual residing in the County of Riverside, California. The 30-year-old Decedent DRYE died on February 21, 2023.

12.    At all relevant times, Plaintiff SHAMEKA DRYE was an individual residing in the County of Riverside, California and was the wife of Decedent DRYE. SHAMEKA DRYE sues in her individual capacity and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure §§377.30 and 377.60. Plaintiff SHAMEKA DRYE is Decedent's successor-in-interest as defined in CCP §377.11 and succeeds to Decedent's interest in this action. SHAMEKA DRYE seeks wrongful death and survival damages under federal and state law, and tort damages pursuant to negligent infliction of emotional distress.

13.    At all relevant times, Plaintiff L.N.M.D. was an individual residing in the County of Riverside, California and is the natural minor child of Decedent DRYE and sues in his/her individual capacity for wrongful death and representative capacity for survival damages, and punitive damages under state and federal law. Plaintiff L.N.M.D. is Decedent's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

14.    At all relevant times, Plaintiff J.C.T.D. was an individual residing in the County of Riverside, California and is the natural minor child of Decedent DRYE and sues in his/her individual capacity for wrongful death and representative capacity for survival damages, and punitive damages under state and federal law. Plaintiff J.C.T.D. is Decedent's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

15.    At all relevant times, Plaintiff D.R.D. was an individual residing in the County of Riverside, California and is the natural minor child of Decedent DRYE and sues in his/her individual capacity for wrongful death and representative capacity for survival damages, and punitive damages under state and federal law. Plaintiff D.R.D. is Decedent's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

16.    At all relevant times, Plaintiff A.M.D. was an individual residing in the County of Riverside, California and is the natural minor child of Decedent DRYE and sues in his/her individual capacity for wrongful death and representative capacity for survival damages, and punitive damages under state and federal law. Plaintiff A.M.D. is Decedent's successor-in-interest pursuant to California Code of Civil Procedure §§377.30 and 377.60.

17.    At all relevant times, Plaintiff P.N.K.D. was an individual residing in the County of Riverside, California and is the natural minor child of Decedent DRYE and sues in his/her individual capacity for wrongful death and representative capacity for survival damages, and punitive damages under

state and federal law. Plaintiff P.N.K.D. is Decedent's successor-in-interest pursuant to the California Code of Civil Procedure §§377.30 and 377.60.

18.    At all relevant times, Plaintiff DANNIE-ANN CONNER was an individual residing in the County of Riverside, California and was the natural mother of Decedent DRYE. Plaintiff CONNER seeks wrongful death damages, compensatory damages, and punitive damages under federal and state law.

19.    At all relevant times, Defendant CITY OF HEMET ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including Hemet Police Department ("HPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the HPD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of DOES 1-10, inclusive.

20.    At all relevant times, Defendants DOES 1-8, inclusive, were duly appointed HPD Officers, Sergeants, Lieutenants, and employees and agents ("Officer DOES") of Defendant CITY (regardless of rank or title), subject to the oversight and supervision by Defendant CITY'S elected and non-elected officials and acted within the course and scope of their employment and under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usage of Defendant CITY and HPD, and under color of the statutes and regulations of the State of California. At all relevant times, Defendants DOES 1-8 were the agents of each Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each

Defendant. At all relevant times, Defendants DOES 1-8, inclusive, acted with the complete authority and ratification of their principal, Defendant CITY.

21.    Defendants DOES 9-10, inclusive, are managerial, supervisorial, or policymaking employees of the Defendant CITY ("Supervisor DOES") who were acting under color of law within the course and scope of their duties as supervisorial officials for the HPD. Defendants DOES 9-10, inclusive, were acting with the complete authority of their principal, Defendant CITY.

22.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

23.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

24.    Plaintiffs are informed and believe, and on that basis allege, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

25.    All the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

26.   Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein all individual Defendants, including Defendant Officers acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and the Defendant CITY.

27.   Pursuant to Cal. Govt. Code §815.2(a), Defendant CITY is vicariously liable for the nonfeasance and malfeasance of the individual Defendant Officers as alleged by Plaintiffs' state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendant Officers are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant CITY is also liable pursuant to Cal. Govt. Code §815.6.

28.   Plaintiffs suffered the loss of Decedent and Decedent suffered serious bodily injury and death as a direct and proximate result of the actions of Defendant Officers. Defendant Officers are directly liable for Plaintiffs' and Decedent's harm, injuries, and damages under federal law pursuant to 42 U.S.C. §1983.

29.   All Defendants who are natural persons, including Defendant Officers are sued individually and/or in his/her capacity as officers, supervisors, agents, policy makers, and representatives (regardless of rank or title) of Defendant CITY and the HPD; and punitive damages are only being requested as to these Defendants, and not Defendant CITY.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

30.   Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 29, inclusive, as if fully set forth herein.

31.   Decedent DRYE sustained injuries and harm including pre-death pain and suffering, loss of enjoyment of life, loss of opportunity of life, and

1   loss of life when Officer DOES used excessive and unreasonable force against
2   him and employed negligent tactics, including when they shot Decedent
3   multiple times at his home killing him.

4        32.    On February 21, 2023, at approximately 10:10 a.m., at or around
5   the 800 block of South State Street, Hemet, California 92545, County of
6   Riverside, City of Hemet officer(s) were looking for a man wanted for a simple
7   theft offense. Believing the wanted individual may have gone into Decedent's
8   back yard, an officer knocked on the front door of the Drye residence and
9   asked to look in the back yard. The Decedent told the officer he preferred the
10  police not enter his yard and explained that he had a firearm and would go
11  look himself. The police offer assented to Decedent's request, and he went to
12  the back yard.

13       33.    At all relevant times, Decedent DRYE was lawfully on his own
14  property, was not suspected of committing a crime, and was not threatening
15  the officers or any other person. HPD Officers did not have reasonable
16  suspicion to detain Decedent DRYE, did not have probable cause to arrest
17  Decedent DRYE, and intentionally used excessive and unreasonable deadly
18  force against Decedent DRYE in an effort to prevent him from exercising his
19  rights under the law and Constitution.

20       34.    Decedent DRYE walked out his back door with his firearm (which
21  he told Hemet police he would have with him) pointed at the ground. Decedent
22  DRYE was not given an order to drop his weapon. The officers never even
23  identified themselves. Instead, Decedent DRYE was shot after he stepped out
24  of his house. The shooting officer fired through a fence and from behind a
25  block wall in a neighboring yard. It appears the shooting officer either ignored,
26  or was never told, that Decedent DRYE would be coming out of his house with
27  a firearm.

28

PLAINTIFFS' COMPLAINT FOR DAMAGES

35.     Plaintiff SHAMEKA DRYE saw the entire incident unfold. She never heard the officers give any warnings before they killed Decedent DRYE. After Decedent DRYE was shot, Plaintiff SHAMEKA DRYE tried to rush to his side but was ordered to the ground and treated like a criminal herself. Plaintiff SHAMEKA DRYE couldn't be with Decedent DRYE as he suffered. She had to watch him struggle to breathe, helpless to comfort him.

36.     Decedent DRYE did not pose an immediate threat of death or serious bodily injury to any person at the time Defendant Officer DOES shot and killed him.

37.     After the shooting, the Defendant Officer DOES failed to provide or delayed medical treatment for Decedent DRYE.

38.     Throughout the incident, the Defendant Officer DOES displayed negligent tactics, prior to, during, and after their uses of deadly force, including, but not limited to their: positioning, planning, communication, commands, lack of warning, timing, distance, threat assessment, use of force, escalating the situation, failing to de-escalate the situation, and providing/summoning of medical care.

39.     Further, Defendant Officer DOES actions and inactions were unreasonable and in violation of basic officer training.

40.     As a direct and proximate result of Defendant Officer DOES actions, omissions, and misjudgments, including their use of excessive and unreasonable force, Decedent DRYE was caused to suffer great physical and mental pain and suffering, loss of enjoyment of life, and loss of life.

41.     The HPD Officers were not responding to a crime committed by Decedent DRYE and Decedent DRYE was not suspected of having committed a crime. Decedent DRYE was home with his wife and one of their five children at the time. Decedent DRYE was not involved in the officers' investigation on

PLAINTIFFS' COMPLAINT FOR DAMAGES

Harvard Street. Further, Plaintiff SHAMEKA DRYE was present and saw her husband being shot, causing her severe emotional distress.

42.    Decedent DRYE suffered injuries as a result of being shot by HPD Officer(s). The involved HPD Officers also failed to provide and timely summon timely medical care for Decedent DRYE. Further, the HPD were negligent in their hiring, training, retention, and supervision of their officers. The involved HPD officers, under color of law and in the course and scope of their employment as officers for the City of Hemet, used excessive and unreasonable force against Decedent DRYE, and were negligent in their actions and omissions both before and after their use of force.

43.    The intentional and negligent actions and inactions of Defendant Officer DOES caused Decedent DRYE severe pre-death pain and suffering, loss of enjoyment of life, and loss of life, and caused Plaintiffs to suffer the life-long loss of their husband, father, and son, respectively.

44.    The Defendant Officer DOES violated their own policies and basic officer training when they used force, including deadly force against Decedent DRYE, indicating a deficiency in their policies and training for such a serious public issue.

45.    The use of deadly force against Decedent DRYE was excessive and objectively unreasonable under the circumstances, especially because Decedent DRYE did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting, there were other reasonable alternatives to the use of deadly force, and no verbal warning was given that deadly force was going to be used.

## DAMAGES

46.    As a direct and proximate result of the intentional conduct, negligent conduct, reckless disregard, deliberate indifference and otherwise wrongful conduct of Defendants, Plaintiffs SHAMEKA DRYE, L.N.M.D.,

11

1  J.C.T.D., D.R.D., A.M.D., P.N.K.D., and DANNIE-ANN CONNER have
2  suffered and continue to suffer the lifelong loss of their husband, father, and
3  son, respectively, resulting in economic and non-economic damage including
4  for the past and future loss of Decedent's love, companionship, comfort, care,
5  assistance, attention, protection, affection, society, moral support, instruction,
6  training, advice, guidance, gifts or benefits, funeral and burial expenses,
7  household services, and future financial support in amounts to be proven at
8  the time of trial (hereinafter called "wrongful death damages").

9      47.   As a direct and proximate result of the intentional conduct,
10  negligent conduct, reckless disregard, deliberate indifference and otherwise
11  wrongful conduct of Defendants, Decedent DRYE endured severe pre-death
12  pain and suffering, loss of life, and loss of opportunity and enjoyment of life,
13  for which Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D.,
14  and P.N.K.D. bring and can recover as successors-in-interest to Decedent
15  DRYE (hereinafter called "survival damages").

16      48.   The conduct of the individual Defendant Officers were malicious,
17  wanton, oppressive, and accomplished with a conscious disregard for the
18  rights of Plaintiffs and Decedent in that Plaintiffs' and Decedent's
19  constitutional rights were intentionally deprived and violated, and/or there was
20  reckless disregard for constitutional rights of Plaintiffs and Decedent. As such,
21  their conduct as alleged herein entitles Plaintiffs and Decedent an award of
22  exemplary and punitive damages from the individual Defendants. Plaintiffs
23  bring no action for punitive damages against Defendant CITY.

24      49.   Pursuant to 42 U.S.C. §1988(b), Plaintiffs and Decedent are
25  entitled to recover reasonable attorney fees, costs, and interests incurred
26  herein. Pursuant to Cal. Civ. Code §52.1, Plaintiffs and Decedent are entitled
27  to recover civil penalty, costs, and reasonable attorney fees including treble

28

damages. Pursuant to Cal. Code of Civ. Pro. §1021.5, Plaintiffs seeks reasonable attorneys' fees.

## **FIRST CLAIM FOR RELIEF**

**Fourth Amendment—Detention and Arrest (42 U.S.C. §1983)**

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., AND P.N.K.D. against Defendant Officer DOES)

50.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 49 of this Complaint with the same force and effect as if fully set forth herein.

51.   Defendant Officer DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

52.   Defendant Officer DOES detained Decedent DRYE without reasonable suspicion and arrested him without probable cause.

53.   When Defendant Officer DOES used force against Decedent DRYE, pointed firearms at Decedent DRYE, and shot Decedent DRYE, they violated Decedent DRYE'S right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent DRYE under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. Further, the scope and manner of the detention was unreasonable.

54.   Defendant Officer DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent DRYE and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officer DOES.

55.   As a result of their misconduct, Defendant Officer DOES are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

56.    Plaintiffs bring this claim as successors-in-interest to Decedent DRYE and seek survival damages for the violation of Decedent's rights. Plaintiffs also seek reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**Violation of the Fourth Amendment—Unreasonable Search and Seizure—Excessive Force (42 U.S.C. §1983)**

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., AND P.N.K.D. against Defendant Officer DOES)

57.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 56, inclusive, as if fully set forth herein.

58.    At all relevant times Defendant Officer DOES acted under the color of state law and within the course and scope of their employment as HPD officers for Defendant CITY.

59.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

60.    Defendant Officer DOES used excessive and unreasonable deadly force against Decedent by repeatedly shooting Decedent and causing his death. Defendant Officer DOES unjustified shooting and other uses of force, deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

61.    When Defendant Officer DOES used deadly force against Decedent, no officer or person was about to be harmed by Decedent because Decedent was not a threat to the safety of others, was not an immediate threat of death or serious bodily injury to any person at the time, no warning was given that force would be used, and there were several less-intrusive

14
PLAINTIFFS' COMPLAINT FOR DAMAGES

alternatives to the use of deadly force available to the Defendant Officer DOES at the time.

62. The Defendant Officer DOES should have given the Decedent commands and warnings, time to comply with those commands and warnings, and attempted to de-escalate the situation prior to resorting to the highest level of force possible and instead of escalating the situation to using deadly force. The Defendant Officer DOES are trained that they should consider the least intrusive force option, and to only use deadly force when necessary to prevent an immediate threat to the life of a person. The Defendant Officer DOES had the time and ability to attempt voluntary compliance without resorting to physical force through de-escalation and tactical communication but failed to do so.

63. Upon information and belief, the Defendant Officer DOES had the opportunity to provide a verbal warning to Decedent but failed to do so prior to the use of force against Decedent. This shooting, and other uses of force violated basic officer training and standard law enforcement training.

64. The Defendant Officer DOES caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendant's acts and omissions deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65. As a result of their misconduct, Defendant Officer DOES are liable for Decedent's injuries, either because they were integral participants in the wrongful detention and arrest or use of excessive force, or because they failed to intervene to prevent these violations.

66.    As a direct result of the aforesaid misconduct, acts and omissions of Defendant Officer DOES, Decedent DRYE suffered great physical and mental injury prior to his death, loss of life, and loss of enjoyment of life.

67.    The shooting was excessive and unreasonable, especially because Decedent DRYE posed no immediate threat of death or serious bodily injury at the time of the shooting. Further, Defendant Officer DOES shooting, and use of force violated their training and standard police officer training, there were other reasonable alternatives, and no verbal warning was given.

68.    The conduct of Defendant Officer DOES alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and warrants the imposition of exemplary and punitive damages in an amount according to proof.

69.    Plaintiffs seek survival damages, including but not limited to Decedent's pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**Violation of the Fourteenth Amendment—Substantive Due Process—**

**Interference with Familial Relationship (42 U.S.C. §1983)**

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., P.N.K.D. and DANNIE-ANN CONNER against Defendant Officer DOES)

70.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 69 of this Complaint with the same force and effect as if fully set forth herein.

71.    At all relevant times Defendant Officer DOES acted under the color of state law and within the course and scope of their employment with Defendant CITY.

72.   The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.

73.   Families have a fundamental liberty interest in their shared companionship and society and the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. §1983. *See Lee v. County of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001); *Kelson v. County of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985).

74.   Plaintiffs and Decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' relationship with Decedent DRYE.

75.   By engaging in the conduct alleged herein, Defendants deprived Plaintiffs of their right to a familial relationship with Decedent DRYE, in such a manner as to shock the conscience, including by unlawfully seizing Decedent, and using excessive force against Decedent as alleged herein, which caused Decedent's death and Plaintiffs' life-long loss. This conduct violated Plaintiffs' and Decedent's rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

76.   Defendant Officer intentionally shot, or failed to intervene in the intentionally shooting, of Decedent, causing his death, when Decedent was not an immediate threat of death or serious bodily injury to any person at the time.

77.   When Defendant Officer arrived, they shot Decedent, causing his death. The Defendant Officers failed to give Decedent a verbal warning before they used deadly force against him and took his life. Decedent was not an immediate threat of death or serious bodily injury to anyone at the time of the

17

shooting. Further, Defendant Officers had no information that anyone had been injured, or that a serious crime had been committed. The use of force by Defendant Officers, without any warning, under these circumstances was unreasonable, excessive, exhibited a deliberate indifference to and reckless disregard for Decedent's and Plaintiffs' rights, and displayed a purpose to harm Decedent unrelated to a legitimate law enforcement objective – especially because Decedent had not committed a serious or violent crime and was not an immediate threat of death or serious bodily injury. In so doing, Defendant Officer's conduct constitutes a violation of Plaintiffs' and Decedent's Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship with their son and beloved family member.

78. Upon information and belief, Defendants failed to give Decedent a verbal warning before they used deadly force against him and took his life.

79. There were less-intrusive means available to the Defendant Officer DOES besides the use of deadly force, including de-escalation and tactical communication to attempt voluntary compliance, and upon information and belief, the Defendant Officer DOES failed to deploy these less-intrusive techniques and/or failed to allow Decedent the time to comply thereafter.

80. Defendant Officer's conduct shocked the conscience and was in deliberate indifference to the rights of Decedent and Plaintiffs. Further, Defendant Officers acted with the purpose to harm unrelated to a legitimate law enforcement objective.

81. By engaging in the foregoing conduct, Defendant Officers were each integral participants and acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with the purpose to harm unrelated to any legitimate law enforcement objective. Defendant Officers are

18

liable to Plaintiffs and Decedent for the interference with their familial relationship.

82.    As a result of their misconduct, Defendant Officers are liable to Plaintiffs, either because they were integral participants in the deliberate indifference to Plaintiffs' rights, or because they failed to intervene to prevent the denial of Plaintiffs' rights.

83.    As a direct and proximate result of the wrongful conduct of Defendant Officer DOES, Plaintiffs have been deprived of the lifelong love, companionship, comfort, support, society, care, and sustenance of Decedent DRYE, and will continue to be so deprived for the remainder of their natural lives. Further, Decedent DRYE suffered pre-death pain and suffering, loss of enjoyment of life, and loss of life.

84.    The use of excessive and objectively unreasonable force including deadly force by Defendant Officers as alleged above, shocks the conscience, was in deliberate indifference and reckless disregard for Decedent's and Plaintiffs' rights, and displayed a purpose to harm Decedent unrelated to a legitimate law enforcement objective. In so doing, Defendants' conduct constitutes a violation of Plaintiffs' and Decedent's Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship.

85.    Defendant Officer DOES conduct was malicious, oppressive and in reckless disregard for the rights and safety of Decedent and Plaintiffs and warrants the imposition of exemplary and punitive damages as to Defendant Officer DOES.

86.    As a direct result of the death of Decedent, Plaintiffs have suffered the loss of Decedent's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of Decedent. Plaintiffs seek wrongful death damages under this claim.

87.    Plaintiffs bring this claim individually and seeks wrongful death damages under this claim for their past and future loss of Decedent's love, companionship, comfort, care, assistance, attention, protection, affection, society, moral support, instruction, training, advice, guidance, gifts or benefits, funeral and burial expenses, household services, and future financial support, and punitive damages.

88.    Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. §1988 and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Fourth Amendment —Denial of Medical Care (42 U.S.C. §1983)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., AND P.N.K.D. against Defendant Officer DOES)

89.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90.    Defendant Officer DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

91.    The denial of medical care by Defendant Officer DOES deprived Decedent DRYE of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent DRYE under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

92.    Defendant Officer DOES failed to timely provide, call for, and/or allow medical care for Decedent DRYE after they began to use excessive and unreasonable deadly force against Decedent DRYE.

93.    As a result of the foregoing, Decedent DRYE suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, and loss of life.

94.   Defendant Officer DOES knew that failure to provide and/or allow timely medical treatment to Decedent DRYE could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Decedent DRYE great bodily harm and death.

95.   The conduct of Defendant Officer DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent DRYE and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officer DOES.

96.   As a result of their misconduct, Defendant Officer DOES are liable for Decedent DRYE'S injuries, either because they were integral participants in the wrongful detention, force, and denial of medical care, or because they failed to intervene to prevent these violations.

97.   Plaintiffs bring this claim as successors-in-interest to Decedent DRYE and seek survival damages for the violation of Decedent DRYE'S rights. Plaintiffs also seek reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Supervisor Liability (42 U.S.C. §1983)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendant Supervisor DOES)

98.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 97 of this Complaint with the same force and effect as if fully set forth herein.

99.   Defendant Officer DOES acted under the color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

100.  At all relevant times herein, Defendant Officer DOES were acting under the supervision and direction of the Defendant Officer DOES who were the supervisors on scene and/or scene commanders.

1    101. Defendant Officer DOES violated Plaintiffs' and Decedent
2    DRYE'S constitutional rights when they used excessive and unreasonable
3    force against Decedent DRYE, denied and/or delayed medical care to
4    Decedent DRYE, and interfered with the familial relationship between
5    Plaintiffs and Decedent DRYE.

6    102. Defendant Officer DOES and Supervisor DOES knowingly
7    contributed, participated in, and failed to terminate or intervene in the
8    constitutional violations as described herein. In other words, the conduct of
9    Defendant Officer DOES and Supervisor DOES violated Plaintiffs and
10   Decedent's rights through their unconstitutional policies, procedures, training,
11   supervision, and direct involvement in this action.

12   103. Defendant Officer DOES and Supervisor DOES knew of should
13   have known that Decedent DRYE was not an immediate threat to officers or
14   any other person at the time force was used and should have de-escalated the
15   situation as opposed to escalating the situation themselves and allowing the
16   situation to escalate by the conduct of their subordinates.

17   104. By their individual conduct as described herein, Defendant Officer
18   DOES and Supervisor DOES set in motion a series of acts by their
19   subordinates. Once set in motion, Defendant Officer DOES and Supervisor
20   DOES refused to terminate that series of acts by their subordinates, that
21   Defendant Officer DOES and Supervisor DOES knew or reasonably should
22   have known would cause the subordinates to deprive Plaintiffs and Decedent
23   DRYE of their rights.

24   105. Defendant Officer DOES and Supervisor DOES disregarded the
25   known and/or obvious consequence that their particular policy, training, and
26   supervision deficiencies and omissions would cause their subordinates to
27   violate Plaintiffs and Decedent's constitutional rights; and the policy and
28   training deficiencies and omissions of Defendant Officer DOES and

22

Supervisor DOES caused their subordinates to deprive Plaintiffs and Decedent DRYE of their constitutional rights.

106.   Defendant Officer DOES and Supervisor DOES conduct was so closely related to the deprivation of rights of Plaintiffs and Decedent, specifically because they personally participated in those deprivations, that it was the moving force that caused their ultimate injury, harm, and/or damages.

107.   The conduct of Defendant Officer DOES and Supervisor DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent DRYE and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officer DOES and Supervisor DOES.

108.   As a direct and proximate result of Defendant Officer DOES and Supervisor DOES conduct, Plaintiffs have suffered the life-long loss of Decedent DRYE'S love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of Decedent DRYE, and will continue to do so for the remainder of their lives. Further Decedent DRYE suffered pre-death pain and suffering, loss of life, loss of enjoyment of life, and loss of life.

109.   Plaintiffs bring this claim individually and as successors-in-interest to Decedent DRYE and seek survival and wrongful death damages. Plaintiffs also seek reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom or Policy

### (42 U.S.C. §1983)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendants CITY and Supervisor DOES)

23

110. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111. Defendants Officer DOES and Supervisor DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

112. Defendants Officer DOES and Supervisor DOES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

113. On information and belief, Defendants Officer DOES and Supervisor DOES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Decedent's death.

114. A municipality is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

115. On and for some time prior to and after February 21, 2023 (and continuing to the present date), the Defendant CITY deprived Plaintiffs, Decedent, and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing, and applying the following unconstitutional customs, policies, and practices:

A.   Using excessive force, including excessive deadly force.

B.   Providing inadequate training regarding the use of deadly force.

C.   Employing and retaining CITY Police Officers, including Defendant Officers and other HPD Officers, who the Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY HPD policies concerning the use of deadly force.

D.   Inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, including the Defendant Officers, concerning the use of force and deadly force.

E.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Defendant Officers and other CITY police officers.

F.   Ratifying the misconduct and unlawful uses of excessive force by CITY Officers, including Defendant Officers and other CITY police officers (including but not limited to the misconduct and excessive force used by Defendant Officers against Decedent).

G.   Failing to discipline Defendant Officers and other CITY Officers for conduct contrary to law and departmental policy (including, but not limited to the misconduct and excessive force used by Defendant Officers against Decedent).

H.   Failing to re-train Defendant Officers and other CITY Officers concerning the use of force and responding to calls for medical care even though complaints of excessive force filed against CITY Officers with the CITY, in the Superior Courts and in the District Courts.

I.      Encouraging, accommodating, or facilitating a "thin blue line," "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which CITY police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing.

J.      Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional.

K.      Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

L.      Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of mentally ill individuals.

M.      Upon information and belief, CITY, including but not limited to HPD, have an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, or not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings. As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using

excessive deadly force against the citizens that the officers are supposed to protect and serve.

N.      Upon information and belief, as a result of CITY policy, custom and/or practices, officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force.

O.      Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before Decedent was killed by the Defendant Officers. This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against. This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its police department and so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom and/or practice was established was to avoid CITY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all,

27

of its officers' uses of deadly force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY is well aware of how much they would have to pay for any associated litigation.

P.     By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of CITY were done with a deliberate indifference to individuals' safety and rights.

116.   Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY OF HEMET routinely ratifies such behavior and maintains a practice of allowing such behavior:

a.     In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers. in May of 2018, HPD officers encountered the plaintiff in a truck near a business at which an alarm was going off. The officers saw the plaintiff begin slowly driving away, at which point one officer fired ten rounds at the plaintiff's truck. Another officer then intentionally crashed his vehicle into the plaintiff's truck, causing it to strike a pole. When the plaintiff exited the truck unarmed and began to run with his hands raised, a third officer shot him multiple times, including in the back, without warning. The case was resolved following a seven-figure settlement.

1      b.      In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-
2   00779-CJC, Defendant CITY settled with a man who was attacked by a
3   K-9.

4      c.      In *Edmond v. City of Hemet*, in October of 2021, HPD
5   officers encountered the plaintiff in a store parking lot, where he was
6   allegedly panhandling, and asked him to leave, which the plaintiff did.
7   After the plaintiff and the officers returned, the plaintiff began to again
8   comply with the officers' commands, and the officers grabbed him,
9   punched him in the face, forced him to the ground, and restrained him.
10  The case resolved following a six-figure settlement before litigation.

11     d.      In *Hereford v. City of Hemet*, No. 5:22-cv-00394-JWH-
12  SHK, in March of 2021, HPD officers stopped one of the plaintiffs while
13  he was in his parked car in front of his fiancée's home and arrested him
14  for driving with an allegedly suspended license. The officers then began
15  searching for his car, which his fiancée and her daughter began to film.
16  The officers responded by threatening his fiancée and her daughter with
17  arrest, knocking the daughter's phone out of her hand, striking the
18  fiancée, and causing her a variety of injuries in her head, neck, shoulder,
19  and back. According to information and belief, this case is currently in
20  litigation in federal district court.

21     e.      In *Mendoza v. City of Hemet*, No. 5:21-cv-01134-JGB-SHK,
22  in May of 2020, the plaintiff — a small woman in shorts and a t-shirt —
23  was stopped while driving by HPD officers. Seven officers drew their
24  weapons and shouted commands, and the plaintiff complied with their
25  orders to exit her vehicle and turn around. As she did so, she was
26  knocked to the ground.

27     f.      In *Lagafoged v. City of Hemet*, No. 5:19-cv-00903-SVW-
28  SHK, in August of 2018, HPD officers encountered the plaintiff

behaving erratically while standing on a balcony and swinging a stick in the air. The officers responded by releasing a K-9 dog to bite the plaintiff before tasing him multiple times and hogtieing him, resulting in his death. The case resolved following a six-figure settlement.

g.     In *Martin v. City of Hemet*, No. 5:18-cv-02377-JGB-KK, in October of 2017, the plaintiff was stopped by officers in a parking lot while his wife was in her car nearby. When the plaintiff began to walk away from the officers and his wife, the officers commanded him to drop a small pocketknife he was holding, and the plaintiff put his hands above his head. With the plaintiff's hands raised and visible, two HPD officers fired seven to ten shots at him, killing him. The case resolved following a six-figure settlement.

117.  Defendants CITY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiffs, and other individuals similarly situated.

118.  By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Supervisor DOES acted with intentional, reckless, and callous disregard for the life of Decedent and for Decedent's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and Supervisor DOES were affirmatively linked to and were a significantly influential force behind the injuries of Decedent, and Plaintiffs.

30

119.   The Defendant CITY'S actions and inactions as described above, including the Defendant CITY'S unconstitutional customs, practices, and policies, caused the deprivation of Plaintiffs' and Decedent's rights by Defendant Officers; that is, Defendant CITY'S unconstitutional customs, practices, and polices are so closely related to the deprivation of Plaintiffs' and Decedent's rights as to be the moving force that caused the ultimate injury.

120.   As a direct and proximate result of the aforementioned conduct, Decedent DRYE endured severe pain and suffering loss of enjoyment of life, and loss of life. Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their father, including being deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent DRYE, and will continue to be so deprived for the remainder of their natural lives.

121.   Accordingly, Defendant CITY and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. §1983.

122.   Plaintiffs brings this claim individually and as successor-in-interest to Decedent and seeks both survival and wrongful death damages. Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

### SEVENTH CLAIM FOR RELIEF

### Municipal Liability for Ratification

### (42 U.S.C. §1983)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendants CITY and Supervisor DOES)

123.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 122 of this Complaint with the same force and effect as if fully set forth herein.

124.   Defendants Officer DOES and Supervisor DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

125.   The acts of Defendant Officers deprived Plaintiffs' and Decedent of their particular rights under the United States Constitution.

126.   Upon information and belief, a final policymaker, including Defendants CITY and Supervisor DOES acting under color of law, has ratified unreasonable uses of force, including deadly force.

127.   Upon information and belief, a final policymaker, including Defendants CITY and Supervisor DOES acting under color of law, had final policymaking authority concerning the acts of Defendant Officers, and ratified Defendant Officers' conduct and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendant Officers' conduct.

128.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant Officers were "within policy," and have ratified multiple prior incidents of the use of excessive force, including excessive less-lethal force and deadly force.

129.   The Defendant CITY'S unconstitutional ratification of Defendant Officers' use of excessive and unreasonable force caused the deprivation of Plaintiffs' and Decedent's rights; that is, Defendant CITY'S ratification is so closely related to the deprivation of Plaintiffs' and Decedent's rights as to be the moving force that caused the ultimate injury.

130.   Based on information and belief, Defendant CITY has a longstanding practice of unconstitutional policies, including to not disciplined, reprimanded, retrained, suspended, or otherwise penalized officers in connection with their underlying acts giving rise to Constitutional violations, which Defendant CITY HEMET routinely ratifies.

131.  As a direct and proximate result of the aforementioned conduct, Decedent DRYE endured severe pain and suffering loss of enjoyment of life, and loss of life. Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their father, including being deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent DRYE, and will continue to be so deprived for the remainder of their natural lives.

132.  Accordingly, Defendant CITY is liable to Plaintiffs for compensatory damages under 42 U.S.C. §1983.

133.  Plaintiff seeks compensatory damages reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and costs of suit.

### EIGHTH CLAIM FOR RELIEF

#### Municipal Liability—Failure to Train (42 U.S.C. §1983)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendants CITY and Supervisor DOES)

134.  Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 133 of this Complaint with the same force and effect as if fully set forth herein.

135.  Defendants Officer DOES and Supervisor DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

136.  The acts of Defendant Officers as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they unreasonably seized Decedent, and used unreasonable force against Decedent without justification, causing his death.

137.  On information and belief, Defendant CITY failed to properly and adequately train HPD Officers, including Defendant Officers to handle the usual and recurring situations with which they must deal, including with

33

regard to the use of force and deadly force generally, de-escalation techniques, tactical communication, and tactical positions. The training policies of Defendants CITY and Supervisor DOES were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

138. On information and belief, the Defendant CITY failed to adequately train their officers not to shoot a person who is not an immediate threat of death or serious bodily injury and failed to train their officers in the appropriate tactics prior to and in an effort to eliminate the use of force. As a result of this deficient policy and deficient training, the Defendant Officers used excessive and unreasonable force against Decedent, resulting in the injuries claimed in this lawsuit.

139. Defendant CITY and Supervisor DOES were deliberately indifferent to the obvious consequences of its failure to train its officers adequately as described herein.

140. The failure of Defendant CITY and Supervisor DOES to provide adequate training caused the deprivation of Plaintiffs' and Decedent's rights by Defendant Officers; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's and Decedent's rights as to be the moving force that caused the ultimate injury.

141. Based on information and belief, Defendant CITY has a longstanding unconstitutional policy of failing to adequately trained officers regarding the use of deadly force and de-escalation.

142. As a direct and proximate result of the aforementioned conduct, Decedent DRYE endured severe pain and suffering loss of enjoyment of life, and loss of life. Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their father and husband, including being deprived of the life-long love, companionship, comfort, support,

1    society, care, and sustenance of Decedent DRYE, and will continue to be so
2    deprived for the remainder of their natural lives.

3        143.   Accordingly, Defendant CITY and Supervisor DOES are liable to
4    Plaintiffs for compensatory damages under 42 U.S.C. §1983.

5        144.   Plaintiffs brings this claim individually and as successor-in-
6    interest to Decedent and seeks both survival and wrongful death damages.
7    Plaintiff also seeks reasonable attorneys' fees and costs under this claim.

8                        **NINTH CLAIM FOR RELIEF**

9                        **False Arrest/False Imprisonment**

10       (By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and
11        P.N.K.D. against Defendant Officer DOES directly; and CITY vicariously)

12       145.   Plaintiffs repeat and re-allege each and every allegation in
13   paragraphs 1 through 144 of this Complaint with the same force and effect as
14   if fully set forth herein.

15       146.   Defendant Officers, while working as officers for the HPD and
16   acting within the course and scope of their duties, intentionally deprived
17   Decedent DRYE of his freedom of movement by use of force, threats of force,
18   menace, fraud, deceit, and unreasonable duress. Defendant Officers detained
19   Decedent DRYE without reasonable suspicion and arrested him without
20   probable cause.

21       147.   Decedent DRYE did not knowingly or voluntarily consent.

22       148.   Defendant Officers detained Decedent DRYE for an appreciable
23   amount of time.

24       149.   The conduct of Defendant Officers was a substantial factor in
25   causing the harm to Decedent DRYE.

26       150.   Defendant CITY is vicariously liable for the wrongful acts of
27   Defendant Officers pursuant to section 815.2(a) of the California Government
28   Code, which provides that a public entity is liable for the injuries caused by

its employees within the scope of the employment if the employee's act would subject him or her to liability.

151. The conduct of Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent DRYE, entitling Plaintiff to an award of exemplary and punitive damages.

152. As a result of their misconduct, Defendant Officers are liable for Decedent DRYE'S injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

153. Plaintiffs bring this claim as successors-in-interest to Decedent DRYE and seek wrongful damages under this claim.

## TENTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code §§815, 820 and California Common Law)**

(Survival/Wrongful Death)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendant Officer DOES directly; and CITY vicariously)

154. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 153 of this Complaint with the same force and effect as if fully set forth herein.

155. At all relevant times Defendant Officers acted under the color of state law and within the course and scope of their employment with Defendant CITY.

156. When Defendant Officers were detaining Decedent, Decedent was not threatening any person, and Decedent never verbally threatened any Defendant Officers.

157. Decedent was not attempting, willing, or threatening to inflict harm to anyone. However, Defendant Officers used force against Decedent including when they repeatedly shot Decedent without justification.

158. The use of deadly force was excessive and objectively unreasonable, especially because throughout the incident, Decedent presented no immediate threat to the safety of the Defendant Officers or others, including not an immediate threat of death or serious bodily injury to any Defendant Officer or other person, there were less lethal alternatives, no verbal warning was given, and the Defendant Officers were responding to a call completely unrelated to Decedent. Further, Defendants' shooting, and use of force violated their training, standard law enforcement training, and generally accepted law enforcement standards.

159. Defendant Officers had no legal justification for using force against Decedent, and the use of force was unreasonable and non-privileged. Moreover, Decedent did not knowingly or voluntarily consent to the use of force against him.

160. Defendant Officers caused various injuries as mentioned herein and are liable either because they directly harmed Decedent or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Decedent.

161. As a direct and proximate result of the aforesaid acts and omissions of Defendant Officers, Decedent suffered great physical and mental injury, as well as fear and emotional distress related to his physical injuries, pain and suffering, humiliation, anguish, and death.

162. The conduct of Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of

Decedent, entitling Plaintiffs to an award of exemplary and punitive damages, which Plaintiffs seek under this claim.

163. Defendant Officers are directly liable for their actions and inactions pursuant to Cal. Govt. Code §820(a).

164. The Defendant CITY is vicariously liable for the wrongful acts and omissions of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

165. Plaintiffs seek compensatory damages and brings this wrongful death claim as successor-in-interest to Decedent against Defendants and seeks survival and wrongful death damages under this claim. Plaintiff also seeks reasonable costs and funeral and burial expenses on this claim.

## ELEVENTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code §§815, 820 and California Common Law)**

(Survival/Wrongful Death)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendant Officer DOES directly; and CITY vicariously)

166. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 165 of this Complaint with the same force and effect as if fully set forth herein.

167. At all relevant times Defendant Officers acted under the color of state law and within the course and scope of their employment with Defendant CITY.

168. Peace Officers, including Defendant Officers, have a duty to use reasonable care to prevent harm or injury to others. This duty includes but is not limited to the following: using appropriate tactics, giving appropriate commands, giving warnings, allowing time for the subject to understand and

38

comply with appropriate commands and warnings, not using any force unless necessary, using less-intrusive options, acting objectively reasonable when using deadly force, only using deadly force as a last resort, and timely rendering medical care.

169.   Defendants breached this duty of care. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

A.   Defendants' failure to constitutionally respond to Decedent.

B.   Defendants' failure to properly and adequately assess the need to use force against Decedent.

C.   Defendants' negligent tactics and handling of the situation with Decedent, including the failure to de-escalate the situation.

D.   Defendants' negligent detention of Decedent.

E.   Defendants' negligent use of force against Decedent.

F.   Defendants' negligent denial or delay of medical care to Decedent.

G.   Negligent tactics and handling of the situation with Decedent, including pre-shooting negligence and the failure to give appropriate commands and warnings.

H.   Defendants' failure to properly train and supervise employees to meet the needs of and protect the rights of Decedent.

I.   Defendants' failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent.

J.   Defendants' negligent handling of evidence and witnesses.

K.   Defendants' negligent communication of information during the incident.

L.   Defendants' failure to properly report the incident.

1          M.     Defendants' failure to de-escalate the situation and use proper

2  communication and commands.

3        170.  As a result of their misconduct, Defendants are liable for

4  Plaintiffs' and Decedent's injuries on this claim, either because they were

5  integral participants in the aforementioned conduct, or because they failed to

6  intervene to prevent these violations.

7        171.  As a direct and proximate result of Defendants' conduct as alleged

8  above, and other undiscovered negligent conduct, Decedent was caused to

9  suffer severe pain and suffering and ultimately died from his injuries. Also, as

10  a direct and proximate result of Defendants' conduct as alleged herein,

11  Plaintiffs have also been deprived of their life-long love, companionship,

12  comfort, support, society, care, and sustenance of Decedent, and will continue

13  to be so deprived for the remainder of their natural lives.

14        172.  Pursuant to Cal. Gov't Code §820(a), "a public employee is liable

15  for injury caused by his act or omission to the same extent as a private person."

16        173.  A public entity is liable for injury proximately caused by an act or

17  omission of an employee of the public entity within the scope of his

18  employment if the act or omission would, apart from this section, have given

19  rise to a cause of action against that employee or his personal representative."

20  Cal. Gov't Code §815.2(a). Defendant CITY is vicariously liable under

21  California law and the doctrine of *respondeat superior*.

22        174.  Pursuant to Cal. Code. of Civ. Pro. §§377.20, 377.30, 377.34,

23  Plaintiffs bring this survival action for compensation of Decedent's pre-death

24  pain and suffering, and disfigurement, and for punitive damages.

25        175.  Pursuant to Cal. Code. of Civ. Pro. §§377.60, 377.61, Plaintiffs

26  bring this wrongful death action for compensation for their past and future loss

27  of Decedent's love, companionship, comfort, care, assistance, attention,

28  protection, affection, society, moral support, instruction, training, advice,

1  guidance, gifts or benefits, funeral and burial expenses, household services,
2  and future financial support.

3      176.  Plaintiffs seek attorneys' fees under this claim pursuant to Cal.
4  Code of Civ. Pro. §1021.5 for enforcement of the important rights effecting
5  the public interest that Plaintiffs, Decedent, and those similarly situated have
6  to a right to familial relationship without unreasonable interference, the right
7  privacy of their own home and prevention of government entry without a
8  warrant, and the right to be free from intimidation and physical assault.

9      177.  Defendant Officers are directly liable for their actions and
10  inactions pursuant to Cal. Govt. Code §820(a).

11      178.  Plaintiffs seek compensatory damages and brings this wrongful
12  death claim as successor-in-interest to Decedent against Defendants and seeks
13  survival and wrongful death damages under this claim. Plaintiffs also seek
14  reasonable costs and funeral and burial expenses on this claim.

15              **TWELFTH CLAIM FOR RELIEF**

16  **Negligent Infliction of Emotional Distress (Cal. Govt. Code § 829 and**
17              **California Common Law)**

18  (By Plaintiff SHAMEKA DRYE against Defendant Officer DOES directly;
19              and CITY vicariously)

20      179.  Plaintiffs repeat and re-allege each and every allegation in
21  paragraphs 1 through 178 of this Complaint with the same force and effect as
22  if fully set forth herein.

23      180.  The Defendant Officer DOES negligently caused physical injury
24  to Decedent when the Defendants DOE OFFICERS discharged their firearms
25  at Decedent, striking him multiple times. The use of force, including deadly
26  force, by the Defendant Officer DOES was excessive, unreasonable, and the
27  Defendant Officer DOES were negligent when they discharged their firearms

28

at Decedent, including pre-shooting negligent conduct, actions, inactions, and tactics, and their post-shooting negligent conduct, actions, and inactions.

181.   Plaintiff SHAMEKA DRYE was present at the scene, which is the residence she shared with Decedent, when the Defendant Officer DOES discharged their firearms at Decedent, and Plaintiff SHAMEKA DRYE was aware that Decedent was being injured.

182.   As a result of having lethal force unreasonably fired at Decedent, and Plaintiff SHAMEKA DRYE being present at the scene and seeing her husband being shot repeatedly by the Defendant Officer DOES, Decedent and Plaintiff SHAMEKA DRYE suffered severe emotional distress.

183.   On information and belief, an ordinary reasonable person would be unable to cope with seeing their loved one shot repeatedly, including in the back, especially at their own residence which they shared.

184.   Defendant CITY is vicariously liable for the wrongful acts of the Defendant Officers, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the course and scope of the employment if the employee's act would subject him or her to liability.

185.   Decedent and Plaintiff SHAMEKA DRYE brings this claim individually and seeks damages under this claim as an individual.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code § 52.1)

(By Plaintiffs SHAMEKA DRYE, L.N.M.D., J.C.T.D., D.R.D., A.M.D., and P.N.K.D. against Defendant Officer DOES directly; and CITY vicariously)

186.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 185 of this Complaint with the same force and effect as if fully set forth herein.

187.   At all relevant times Defendant Officers acted under the color of state law and within the course and scope of their employment with Defendant CITY.

188.   California Civil Code, Section 52.1, prohibits any person, including a police deputy, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including using unconstitutionally excessive force. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

189.   Defendant Officers, while working for the Defendant CITY and acting within the course and scope of their duties as Deputies and under color of law, intentionally committed, and attempted to commit acts of violence against Decedent, including by intentionally and repeatedly shooting Decedent and otherwise using unreasonable force against Decedent. This shooting was excessive and objectively unreasonable and especially reckless because Decedent was not attempting to harm any person, was not being assaultive or resistive, and Decedent did not pose an immediate threat of death or serious bodily injury to any person. Further, the Defendants' use of force violated basic law enforcement training, and generally accepted law enforcement standards. Defendants' shot and killed Decedent without any legal justification.

190.   When Defendant Officers repeatedly shot Decedent while Decedent was not an immediate threat of death or serious bodily injury, they interfered with Decedent's constitutional rights to be free from unreasonable searches and seizures to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

PLAINTIFFS' COMPLAINT FOR DAMAGES

191.  On information and belief, Defendant Officers intentionally, and spitefully committed the above acts to discourage or prevent Decedent from exercising his civil rights, or from enjoying such rights, which he was and is fully entitled to enjoy. Defendant Officers intentionally interfered with the above constitutional rights of Decedent, and as alleged herein, which can be demonstrated by Defendants' reckless disregard for Decedent's constitutional rights.

192.  On information and belief, Decedent reasonably believed and understood that the violent acts committed by Defendant Officers were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

193.   The conduct of Defendant Officers was a substantial factor in causing Decedent's harm, loss, injury, damages, and death and Plaintiffs' harm and loss.

194.  The Defendant CITY is vicariously liable for the wrongful acts of Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

195.  Defendants CITY and DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

196.  The conduct of Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's rights, justifying an award of exemplary and punitive damages as to Defendant Officers

197.  Plaintiffs seek compensatory damages for the violations of Decedent's rights, including for his pre-death pain and suffering, loss of

44

1    enjoyment of life, and loss of life. Plaintiffs also seek punitive damages, costs,

2    and attorney's fees under California Civil Code section 52 *et seq.* as to this

3    claim. Plaintiffs also seek punitive and treble damages under this claim.

4

5    / / /

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' COMPLAINT FOR DAMAGES

1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs SHAMEKA DRYE; L.N.M.D. a minor by and through guardian *ad litem* Shameka Drye; J.C.T.D. a minor by and through guardian *ad litem* Shameka Drye; D.R.D. a minor by and through guardian *ad litem* Shameka Drye; A.M.D. a minor by and through guardian *ad litem* Shameka Drye; P.N.K.D. a minor by and through guardian *ad litem* Shameka Drye; each individually and as successor and interest to Decedent CHRISTIAN DRYE; and DANNIE-ANN CONNER, individually, requests entry of judgment in their favor against Defendants CITY OF HEMET and DOES 1-10, inclusive, as follows:

1. For general and special compensatory damages, in wrongful death and survival, according to proof at trial, under Federal and State law.

2. For funeral and burial expenses.

3. For punitive and exemplary damages against the individual Defendants in an amount to be proven at trial.

4. For statutory damages and civil penalties.

5. For reasonable attorneys' fees including litigation expenses and treble damages under Federal and State law.

6. For costs of suit and interest incurred herein.

7. For such further relief at law or equity as the Court or jury may deem just and appropriate.

Dated: October 19, 2023     **LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

*/s/      Marcel F. Sincich*
Dale K. Galipo, Esp.
Marcel F. Sincich, Esq.
Trent C. Packer, Esq.
*Attorneys for Plaintiffs*

PLAINTIFFS' COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby submit this demand that this action be tried in front of a jury.

Dated: October 19, 2023            **LAW OFFICES OF DALE K. GALIPO**
                                   **LAW OFFICES OF GRECH & PACKER**


                                   _/s/_        _Marcel F. Sincich_
                                   Dale K. Galipo, Esp.
                                   Marcel F. Sincich, Esq.
                                   Trent C. Packer, Esq.
                                   _Attorneys for Plaintiffs_

47